IN THE MATTER OF: MARK WEBB, A MINOR; SANDRA WEBB, RESPONDENT

No. 8114DC1313

(Filed 18 January 1983)

**Parent and Child § 6.3— allowing DSS to retain custody of child**
    The trial judge did not err in allowing the Department of Social Services to retain custody of a minor child where the evidence tended to show that respondent had had no contact with her son between 1973 and 1979; several visits took place between 1979 and 1980, to which the son responded negatively; the son did not feel secure or comfortable in visiting his natural parent at her home; he would return scared and crying to the foster household; and

there was testimony that frequent visitation by respondent with her son was very detrimental to her son's mental health.

APPEAL by respondent from *LaBarre, Judge.* Judgment entered 3 July 1981 in Juvenile Division of District Court, DURHAM County. Heard in the Court of Appeals 20 September 1982.

On 26 April 1972, respondent Sandra Webb was 12 years old and gave birth to Mark Webb. She lived with her mother, Wilhelmina Webb, in a housing unit of four rooms in Durham County, which was subsequently found to be overcrowded, infested with bugs, improperly screened, poorly kept, and not conducive to maintaining proper hygiene standards. These conditions resulted in reports by school authorities that several children of the Webb household were infected with the contagious disease, impetigo.

Based on the above findings, the District Court of Durham County found all children in the Webb household to be neglected children under G.S. 7A-278. Thus, the court granted full custody and control of all children including Mark and Sandra Webb to the Department of Social Services (DSS). However, none of the children were immediately removed from the Webb household until 9 November 1973 when the DSS took physical custody of Mark Webb and Margaret Webb, daughter of Wilhelmina Webb. Both children were 18 months old at that time, were placed in the foster home of Dorothy Cameron and have remained there while respondent continues living with her mother.

Although respondent had no contact with her son Mark between 1973 and 1979, several visits took place between 1979 and 1980, to which Mark responded negatively. Because neither Mark nor Sandra felt secure or comfortable in visiting their natural parents at the Webb home and both would return scared and crying to the Cameron household, visits were thereafter held at DSS.

Fearing these visits were causing psychological and emotional trauma to the children, the DSS terminated the visits and on 18 March 1981, filed a motion to have the status of this case revised. At the hearings on this motion, a clinical psychologist, qualified and accepted by the court as an expert in the field of clinical psychology, testified that she evaluated Mark Webb on 21

October 1980 and found him intellectually bright and that he appeared to have pent-up anger towards his natural mother. She believed that Mark could not handle re-establishing contact with his mother without counseling; that Mark's attachment is to his foster home; and that he, therefore, should stay there.

A DSS social worker testified that she would recommend any future visits take place at the Cameron home where Mark and Margaret had received excellent care, had opportunities for extra recreational and educational activities and where the foster parents are committed to continue caring for them. Respondent informed her that if Mark could not be returned to her, she would agree to his continuing to live in his foster home. She referred respondent to a parenting group, which she attended. DSS took no action when respondent turned eighteen to try to return Mark to her care and custody except to begin visits in 1979.

Respondent testified at the hearing that after Mark was removed from her custody, she saw him twice during the first year, although she asked as often as once a week to see him; that no social worker discussed with her a plan for reuniting her with her child; and that no social worker advised her what actions she could take to get Mark back.

On cross-examination she testified that she loves Mark but that she failed to send him a gift or card for Christmas since 1973 or for his birthday. She also stated that the Webb household consists of seven people occupying a five-bedroom apartment and that she believes it to be in Mark's best interest to live with her there, although she could provide no reason supporting this belief.

Another DSS social worker stated that some professionals believe frequent visitation was "very detrimental" to Mark's mental health and that perhaps visitation should never occur. She felt that to attempt to promote psychological bonding between respondent and Mark would not be in Mark's best interest. She recommended respondent have custody of her younger child, Terry, but not Mark.

Supervisor of the Permanency Planning Unit testified that respondent did not call each week requesting to see Mark and that she found visits between respondent and Mark to be detrimental.

The court concluded that leaving Mark in the custody of DSS at the Cameron foster home would serve Mark's best interest; that respondent had forfeited her right to visit Mark by her conduct and further visits would be psychologically detrimental to him and not in his best interest. Thus, respondent was ordered to pay $15.00 per week for Mark's support. The court, however, granted respondent custody of her younger child, Terry. From this judgment, respondent appeals.

*James W. Swindell for petitioner appellee.*

*Shirley Dean for respondent appellant.*

MORRIS, Chief Judge.[1]

We note at the outset that respondent violated Rule 28(b)(5), Rules of Appellate Procedure, by failing to note the assignments of error and exceptions to which each question is addressed immediately after each question in the argument portion of her brief.

Despite this violation, we have carefully reviewed the record and believe that the findings of fact are clearly supported by the evidence. In custody cases, "it is mandatory . . . that the trial judge be given a wide discretion in making his determination and it is clear that his decision ought not to be upset on appeal absent a clear showing of abuse of discretion." *Greer v. Greer,* 5 N.C. App. 160, 163, 167 S.E. 2d 782, 784. We find no showing of an abuse of the judge's discretion in this case. The judgment is therefore,

Affirmed.

Judges BECTON and JOHNSON concur.

---

1. The Court's decision in this case was made and written prior to Chief Judge Morris's retirement.